UNITED STATES of America

v.

Billy A. McLEAN, Appellant.

No. 90–3287.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 26, 1991.

Decided Dec. 27, 1991.

James R. Holloway, Asst. Federal Public Defender (appointed by the court), with whom A.J. Kramer, Federal Public Defender, Washington, D.C., was on the brief, for appellant.

Douglas K. Klein, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III and Bruce E. Yannett, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, D.H. GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

In a sort of team effort, Billy McLean, Alease McKoy and Beverly Baylor sold some crack cocaine to an undercover police officer for twenty dollars. The three were arrested and later indicted together. On the second day of trial, after the government had begun presenting its case, McKoy and Baylor pled guilty. The jury convicted McLean of distribution of cocaine base and of aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C), and 18 U.S.C. § 2.

■■■ McLean's first contention, which he says goes to the validity of his conviction, is that the district court should have granted his pretrial motion for a severance on the ground that his co-defendant Baylor was going to present a defense irreconcilable with his. There is no reason to determine if McLean is right about this. Because she entered a guilty plea, Baylor never got around to mounting much of any defense, let alone one inconsistent with McLean's. On her behalf, the jury heard only her counsel's opening statement claiming that she was an innocent bystander. That did not even come close to fulfilling McLean's prediction, on which his severance motion depended, that she would defend by saying she had been receiving drugs from McLean and, as an addict, did not have the requisite *mens rea*. It is true that Baylor (and McKoy) eventually testified against McLean. But McLean could have wound up in the same fix if his motion had been granted and his co-defendants had then been tried first and found guilty. We therefore find ourselves in agreement with *United States v. Davis*, 582 F.2d 947, 952 (5th Cir.1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979), and *Nelson v. United States*, 415 F.2d 483 (5th Cir.1969), *cert. denied*, 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970). When a co-defendant pleads guilty after the defen-

dant's severance motion has been denied, the co-defendant may then testify against the remaining defendant. In this case, the defendant received what was essentially a trial by himself. It is therefore inconsequential whether his severance motion should have been granted.

■ McLean's next point, a more serious one, relates to his sentence. Under the Sentencing Guidelines, McLean's offense, distribution of less than 250 milligrams of cocaine, corresponded to a base offense level of 12. U.S.S.G. § 2D1.1(a)(3). With a criminal history, including two convictions for armed robbery and one conviction for assault with a deadly weapon, McLean qualified as a "career offender." U.S.S.G. § 4B1.1. This boosted his base offense level to 32 and rendered his Criminal History category an automatic VI. U.S.S.G. §§ 4B1.1 & 4B1.2. At that level, the Guidelines required a sentence of 210–262 months. U.S.S.G. Ch. 5, Pt. A. The probation officer, in his presentence report, had recommended that McLean be given a two-point reduction for acceptance of responsibility (U.S.S.G. § 3E1.1), which would have reduced his minimum sentence to 168 months. The district court, after listening to McLean explain his conduct, denied the two-point reduction and sentenced him to 210 months' imprisonment.

Relying on *Burns v. United States,* —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), McLean protests that he did not receive notice that his acceptance of responsibility would be an issue at the sentencing hearing. In *Burns,* the sentencing judge *sua sponte* departed upward from the Guidelines. The Court held that Rule 32(a)(1), Fed.R.Crim.P., required the judge to give advance notice before following this course if neither the government nor the presentence report had urged it. Otherwise, defendants (and the government) would be deprived of any meaningful op-

portunity to comment on the factual and legal predicates for the departure. 111 S.Ct. at 2186–87.

*Burns* is not controlling. The presentence report, which McLean received at least 10 days before the hearing (Rule 32(c)(3)(A), Fed.R.Crim.P.), gave him notice. *Burns* indicated that if the report there had recommended an upward departure, no additional notice would have been required. 111 S.Ct. at 2185–86. In this case, the presentence report informed McLean that at the sentencing hearing, the court would consider adjusting his sentence downward in light of the probation officer's recommendation regarding acceptance of responsibility. The duty to make findings of fact in support of the sentence nonetheless remained with the court. With respect to acceptance of responsibility, the court must find that the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a). The burden is thus the defendant's. Rule 32(a)(1)(C) gives defendants a right of allocution before sentence is pronounced. What they have to say may influence the court's evaluation. This is one reason why, according to the Commentary to the Guidelines, the sentencing court is "in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, commentary note 5. *See United States v. Taylor,* 937 F.2d 676, 680 (D.C.Cir.1991).

The short of the matter is that if a defendant desires the two-point reduction specified in § 3E1.1, he must be prepared to carry his burden of convincing the court by a preponderance of the evidence that he is entitled to it. *See United States v. Burke,* 888 F.2d 862, 869 (D.C.Cir.1989). The favorable recommendation of the probation officer does not relieve him of the burden. Neither does the government's failure to object.[1] The issue cannot finally be deter-

---

1. McLean argues that Rule 311 of the Rules of the United States District Court for the District of Columbia entitled him to advance notice that acceptance of responsibility would be an issue in the sentencing hearing. Apart from the fact that, as we hold, the presentence report itself provided him with notice, McLean misreads the

rule. Rule 311 requires the parties, not the court, to communicate to the probation officer their objections about the presentence report within 10 days of receiving it; the court is then to hold a hearing not more than 5 days before sentencing to resolve any factual disputes. Rule 311(d). In this case, the government interposed

mined until the sentencing hearing. The presentence report in this case therefore sufficiently alerted McLean. Under Rule 32(a)(1) he had notice and a meaningful "opportunity to comment upon the probation officer's determination" in regard to § 3E1.1, whether or not he exercised that opportunity. McLean's case is on all fours with *United States v. White*, 875 F.2d 427, 431–32 (4th Cir.1989), which reached the same conclusion we do here. Although Judge Wilkins wrote his opinion for the court in *White* before the Supreme Court decided *Burns* and although he did not mention Rule 32(a)(1), his analysis is consistent with the Supreme Court's. We respectfully disagree with *United States v. Brady*, 928 F.2d 844, 847–48 (9th Cir.1991), suggesting a contrary result in a discussion Chief Judge Wallace thought unnecessary to the decision. *Id.* at 854–55 (Wallace, C.J., concurring in part and dissenting in part). We note that a later decision of the Ninth Circuit, which cites neither *Brady* nor *Burns*, seems to reject the idea that district courts must give defendants advance notice of their intention to deny a downward adjustment for acceptance of responsibility. *United States v. Palmer*, 946 F.2d 97, 100 (9th Cir.1991).

■ McLean also seeks to persuade us that the district court mistakenly believed it had no authority to grant a § 3E1.1 downward adjustment in the case of a career offender, a legal question about which there had been doubt until the Sentencing Commission's 1989 revision of the Guidelines. U.S.S.G. § 4B1.1. The court did say

that McLean was not "entitled" to the two-point reduction, but we do not take this to reflect a misapprehension of the law. The remark immediately followed the court's statement that it adopted the "factual statements contained in the presentence report ... with one exception," the exception being that McLean had accepted responsibility. This indicated that the court was correctly treating McLean's entitlement to the downward adjustment as dependent on the facts.[2]

■ McLean's final argument is that his sentence was so grossly disproportionate to his crime that it violated the Eighth Amendment. Although the Eighth Amendment's proportionality principle applies to noncapital sentences, fixing prison terms generally involves substantive penological judgments that are properly left to legislatures. *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). McLean's lengthy sentence, seventeen and one-half years for distribution of crack cocaine, is due mainly to his status as a "career offender" with three prior felony convictions. The Eighth Amendment permits legislatures to combat recidivism by imposing long sentences on criminals with a prior record. *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). McLean may have received a much lower sentence if he had been convicted in the District of Columbia courts, as he argues, but "marked divergences" in prison terms may be the consequence of overlapping authority to prosecute offenses arising out of the

no objection, yet the court allowed the prosecutor to argue orally against a downward adjustment under § 3E1.1. Whether Rule 311 should have barred the government from making that presentation at the sentencing hearing is an issue we do not consider. McLean's only contention with respect to Rule 311—which we reject—is that the rule required the court to give him notice.

2. McLean suggests that as a factual matter he plainly qualified under § 3E1.1. There is nothing to this. He went to trial and contested his guilt. A § 3E1.1 adjustment is generally not available to defendants who put the government to its proof. *See* U.S.S.G. § 3E1.1, commentary note 2; *United States v. Dukes*, 936 F.2d 1281, 1282–83 (D.C.Cir.1991). Furthermore, McLean

scarcely helped himself at the sentencing hearing. Rather than showing remorse, he offered excuses. He told the court that he thought the trial would not be about "innocence or guilt" and that he would at worst be sent to a "drug institution" so that he could "get some assistance or something like that, right." To this he added, "I figured that would be more or less what I would get out of this more than being found not guilty, because I feel like I was, right. I wasn't aware at the time what I was doing. I still acknowledge the fact that I was arrested. So I had to have done something, you know." These are not the words of someone who is clearly accepting personal responsibility for their criminal conduct.

same conduct. *Cf. Harmelin*, 111 S.Ct. at 2704 (Kennedy, J., concurring). That too is a matter for Congress.

*Affirmed.*